# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

ANTON CARR,

                Petitioner,          Case Number: 2:13-CV-11702
                                        HONORABLE DENISE PAGE HOOD

v.

KENNETH ROMANOWSKI,

                Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY

Michigan state prisoner Anton Carr has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner, who is currently incarcerated at the Earnest C. Brooks Correctional Facility in Muskegon Heights, Michigan, challenges his conviction for first-degree felony murder, and possession of a firearm during the commission of a felony. Respondent argues that the petition should be denied because the claims are not cognizable and meritless. For the reasons discussed, the Court denies the petition.

## I. Facts

Petitioner's convictions arise from the shooting death of Terrance Richards on January 21, 2009, in the City of Detroit. On the afternoon of January 20, 2009,

Patrice Rice called Richards and asked him to give her and her friend Ruby Moore a ride to get something to eat.  Richards picked them up at a drug house in his gray Dodge Magnum and drove them to a restaurant and liquor store.  Rice testified that she noticed Richards was wearing a diamond watch and had two pairs of Cartier glasses.  Richards stopped at someone's house and retrieved a large plastic bag filled with money, which he placed in the trunk of the vehicle.  Richards drove Rice and Moore back to the drug house, and then left.  Once there, Rice, Moore, and Moore's boyfriend, Corey Bailey, discussed the possibility of robbing Richards.  Bailey refused to rob Richards because he believed that Richards would be carrying a gun. Rice then called Richards to pick her up.  He did and, after making several stops, took her to a motel.  Moore testified that Rice called her from the vehicle and whispered something about $50,000.  Rice again asked Bailey to rob Richards. When he refused, Rice asked Bailey if he could find someone who would.  Bailey agreed to do so.

Bailey testified that he called Petitioner.  He informed Petitioner that he knew of a man with a lot of money.  Bailey told Petitioner the man would be driving a gray Magnum and would come to the drug house.  Bailey testified that he later received a call from Rice stating that she and Richards would be pulling up outside the drug house in ten minutes.  Bailey called Petitioner to relay that information.

Rice testified that when Richards drove her back to the drug house, two men

2

ran up to the vehicle, firing gunshots. She saw that Richards had been shot. The men then ordered her to open the trunk. They took the plastic bag of money from the trunk and fled.

Bailey later called Petitioner and asked him why he killed Richards. Carr replied, "I wanted the cash." Tr., 3/30/10 at 184. Bailey repeatedly called Petitioner because he wanted his portion of the money stolen from Richards. Ultimately, Carr gave Bailey $300, Moore $60, and Rice $55.

Dr. John Scott Somerset, assistant medical examiner for Wayne County, testified that he performed an autopsy on Richards. He determined that Richards died from a bullet wound to the forehead. Dr. Somerset testified that there was evidence of close-range firing around Richards' left eye and left cheek.

Petitioner did not testify in his own defense.

## II.    Procedural History

Following a jury trial in Wayne County Circuit Court, Petitioner was convicted of first-degree felony murder and possession of a firearm during the commission of a felony. On April 16, 2010, he was sentenced to life in prison for the murder conviction and two years in prison for the felony-firearm conviction.

Petitioner filed an appeal of right in the Michigan Court of Appeals. He raised these claims:

3

I.    Defendant-appellant is entitled to a new trial where the trial court erred in denying the motion to quash the bindover.

II.    Defendant-appellant is entitled to a new trial where there was insufficient evidence to find Defendant was the perpetrator of the offense; alternatively, the motion for directed verdict should have been granted.

III.    Defendant-appellant is entitled to a new trial where the closing arguments of the prosecutor were improper.

The Michigan Court of Appeals affirmed Petitioner's convictions. *People v. Carr*, No. 298143, 2011 WL 5374964 (Mich. Ct. App. Nov. 8, 2011).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims raised in the Michigan Court of Appeals. The Michigan Supreme Court denied leave to appeal. *People v. Carr*, 491 Mich. 911 (Mich. Apr. 23, 2012).

Petitioner then filed the pending habeas petition. He raises the same claims raised in state court. Respondent has filed a motion in opposition, arguing that the claims are not cognizable and/or meritless.

## III.    Standard

The petitioner's claims are reviewed against the standards established by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (AEDPA). The AEDPA provides:

4

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (*quoting Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). "[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (*quoting Williams*, 529 U.S. at 413). However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state

5

court's decision must have been more than incorrect or erroneous.  The state court's application must have been 'objectively unreasonable.'" *Id.* at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409.  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, — U.S. —, 131 S. Ct. 770, 789 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87 (internal quotation omitted).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision.  *See Williams*, 529 U.S. at 412.  Section 2254(d) "does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts

them." *Early v. Packer*, 537 U.S. 3, 8 (2002). "[W]hile the principles of 'clearly established law' are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002)).

Lastly, a federal habeas court must presume the correctness of state court factual determinations. *See* 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

## IV. Discussion

### A.   Trial Court's Denial of Petitioner's Motion to Quash

Petitioner first contends that the trial court erred in denying his motion to quash the bindover because insufficient evidence supported a bindover. This claim does not present a cognizable basis for habeas relief. There is no general constitutional right to a preliminary examination before trial. *See Gerstein v. Pugh*, 420 U.S. 103, 125 n. 26 (1975); *Harris v. Neil*, 437 F.2d 63, 64 (6th Cir. 1971). A state court's failure to even hold a preliminary examination does not present a cognizable habeas claim. *See Scott v. Bock*, 241 F.Supp.2d 780, 793 (E.D. Mich. 2003) (Lawson, J.). A claim

7

that the evidence offered at a preliminary examination was insufficient for a finding of probable cause is not cognizable on habeas review. *See David v. Lavinge*, 190 F.Supp.2d 974, 978 (E.D. Mich. 2002) (O'Meara, J.). Further, it is an "established rule that illegal arrest or detention does not void a subsequent conviction." *Gerstein*, 420 U.S. at 119 (citing *Frisbie v. Collins*, 342 U.S. 519 (1952); *Ker v. Illinois*, 119 U.S. 436 (1886)). Therefore, "although a suspect who is presently detained may challenge the probable cause for that confinement, a conviction will not be vacated on the ground that the defendant was detained pending trial without a determination of probable cause." *Gerstein*, 420 U.S. at 119. Because Petitioner is now incarcerated pursuant to a valid conviction, he cannot challenge the preliminary procedures employed prior to his trial. Accordingly, Petitioner is not entitled to habeas relief on this claim.

### B.    Sufficiency of the Evidence Claim

In his second habeas claim, Petitioner argues that the trial court erred in denying his motion for a directed verdict because the prosecutor presented insufficient evidence to prove each element of the crimes of conviction. Petitioner's claim that the trial court erred by refusing to enter a directed verdict is a state-law claim not cognizable on federal habeas review. *King v. Trippett*, 27 F. App'x 506, 510 (6th Cir. 2001) (citing *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)). That

8

portion of this claim is denied.  The second portion of Petitioner's claim, that the convictions are not supported by sufficient evidence, is cognizable on federal habeas review.  Petitioner argues that his convictions rested on the testimony of Corey Bailey and that Bailey's testimony was not credible.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  *In re Winship*, 397 U.S. 358, 364 (1970).  On direct review, review of a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).  In the habeas context, "[t]he *Jackson* standard must be applied 'with explicit reference to the substantive elements of the criminal offense as defined by state law.'"  *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (quoting *Jackson*, 443 U.S. at 324 n.16).

"Two layers of deference apply to habeas claims challenging evidentiary sufficiency."  *McGuire v. Ohio*, 619 F.3d 623, 631 (6th Cir. 2010) (citing *Brown v. Konteh*, 567 F.3d 191, 204-05 (6th Cir. 2009)).  First, the Court "must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the

9

crime beyond a reasonable doubt." *Brown*, 567 F.3d at 205 (citing *Jackson*, 443 U.S. at 319). Second, if the Court were "to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, [the Court] must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id.*

Under Michigan law, the elements of first-degree felony murder are: (1) the killing of a human being; (2) with the intent to kill, to do great bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm would be the probable result; (3) while committing, attempting to commit, or assisting in the commission of any of the felonies enumerated in Mich. Comp. Laws § 750.316; *People v. Smith*, 478 Mich. 292, 318-319 (2007). Robbery is one of the felonies enumerated in Mich. Comp. Laws § 750.316. "The elements of felony-firearm are that the defendant possessed a firearm during the commission of, or the attempt to commit, a felony." *People v. Avant*, 235 Mich.App. 499, 504 (1999).

The Michigan Court of Appeals, although not specifically citing *Jackson*, clearly applied the *Jackson* standard and held that sufficient evidence was presented to sustain Petitioner's convictions:

When determining whether sufficient evidence exists to support a

10

conviction, a court must view the evidence in the light most favorable to the prosecution and determine whether a rational fact finder could conclude that the prosecutor proved every element of the crime charged beyond a reasonable doubt. *People v. Sherman–Hufman*, 466 Mich. 39, 40-41; 642 N.W.2d 339 (2002); *People v. Nowack*, 462 Mich. 392, 399-400; 614 N.W.2d 78 (2000). A reviewing court must draw all reasonable inferences and make credibility determinations in support of the jury verdict. *Id.* at 400. Circumstantial evidence and reasonable inferences drawn therefrom can constitute sufficient proof of the elements of an offense. *Id.* (citing *People v. Carines*, 460 Mich. 750, 757; 597 N.W.2d 130 (1999)).

* * *

The evidence presented during trial supported defendant's convictions. It showed that Rice and Moore discussed robbing Richards to obtain his Cartier eyeglasses, watch with diamonds in it, and bag of money. They asked Bailey to commit the robbery, but he declined because he thought that Richards had a gun. Bailey recruited defendant to commit the robbery, and he agreed to do it. Moore heard Bailey talking to "Anton" about the robbery on her cell phone and identified defendant as "Anton." Several more calls were placed between Moore's cell phone and defendant's cell phone, a "918" number. Bailey told defendant that the man whom he should rob would be arriving at the Ohio residence in a gray Dodge Magnum.

Thereafter, two men with guns approached the Magnum and started shooting toward it when it was parked across the street from the Ohio house. One of the shooters ordered Rice to get out of the car and put her face in the snow. Rice did not know who the shooters were but maintained that Bailey was not one of them because both shooters were taller than Bailey. Bailey and Moore were together in a back bedroom when they heard gunshots. Bailey ran to the window and saw defendant and another man holding guns and standing near the Magnum. They grabbed a bag out of the trunk and ran away. When Rice came into the house, she was upset and exclaimed, "why did they kill him? They was just supposed to rob him."

11

Thereafter, at the Cloverlawn house, Bailey called defendant's cell phone several times using Moore's cell phone in an attempt to get his share of the money recovered from the vehicle. When Bailey asked why defendant killed Richards, defendant responded that he wanted the cash. Defendant eventually arrived and gave Bailey money. Bailey used Moore's cell phone to call defendant's cell phone twice afterward because he was not satisfied with the amount of money that defendant had given to him. Cell phone records revealed that 26 calls were placed between Moore's and defendant's cell phones from 11:00 p.m. on January 20, 2009, to 3:00 a.m. on January 21, 2009.

Defendant contends that Bailey's testimony was unreliable because he was given a very generous plea agreement and had to connect defendant to the shooting in order to keep the agreement and avoid a first-degree murder charge. Defense counsel questioned Bailey about his plea agreement during trial and tried to impeach him with his preliminary examination testimony stating that he admitted at his plea hearing that he had shot Richards. Bailey denied shooting Richards and maintained that he had been confused at the preliminary examination. Bailey's credibility was an issue for the jury to determine. *See Fletcher*, 260 Mich. App. at 561. Thus, viewing the evidence in the light most favorable to the prosecution, sufficient evidence supported defendant's convictions.

*Carr*, 2011 WL 5374964, at *3-4.

When assessing a sufficiency of the evidence claim on habeas review, the Court may not re-weigh evidence or redetermine witness credibility. *Marshall*, 459 U.S. at 434. The record shows that defense counsel thoroughly and effectively cross-examined Bailey regarding his conflicting testimony and his motives for testifying. Assuming the jury found Bailey's testimony to be credible, this testimony was sufficient for a rational trier of fact to find the elements of each of the crimes of

12

conviction.  The Michigan Court of Appeals' decision was not an unreasonable application of *Jackson*.

### C.    Prosecutorial Misconduct Claim

Finally, Petitioner argues that the prosecutor committed misconduct when she vouched for the credibility of a key prosecution witness, Corey Bailey.  He argues that in discussing Bailey's plea agreement, the prosecutor improperly implied she had some special knowledge regarding his truthfulness.  The prosecutor argued:

> Agreement for Special Consideration, ladies and gentlemen, does not say that Corey Bailey or Ruby Moore must testify against Anton Carr. We have been up front. We have been open, and we have put those agreements for special consideration on evidence. They are Exhibits.
>
> Ask for them. Read them. Study them. It says you will testify about the person or persons known to you to be involved. Doesn't specify if you testify against Anton Carr. I don't know Anton Carr. I have no interest in having someone testify about Anton Carr if he didn't commit murder.
>
> My supervisors are not going to—
>
> THE COURT:   Let's talk about the evidence. That is improper.
>
> MR. CRIPPS [defense counsel]:  I strongly object.

*Carr*, 2011 WL 5374964 at *4-5.

The "clearly established Federal law" relevant to a habeas court's review of a prosecutorial misconduct claim is the Supreme Court's decision in *Darden v. Wainwright*, 477 U.S. 168, 181 (1986); *Parker v. Matthews*, — U.S.—, 132 S. Ct.

2148, 2153 (June 11, 2012).  In *Darden*, the Supreme Court held that a "prosecutor's improper comments will be held to violate the Constitution only if they 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.* (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  This Court must ask whether the Michigan Court of Appeals' decision denying King's prosecutorial misconduct claim "'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Parker*, — U.S. at —, 132 S. Ct. at 2155 (quoting *Harrington*, 562 U.S. at —, 131 S. Ct. at 786-87)).

Prosecutors may not vouch for a witness's credibility.  Prosecutorial vouching and an expression of personal opinion regarding the accused's guilt "pose two dangers: such comments can convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury; and the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence." *United States v. Young*, 470 U.S. 1, 18-19 (1985).

The Michigan Court of Appeals found no misconduct in the prosecutor's

14

remarks.  The state court held that the prosecutor's argument regarding the plea agreement did not convey that she had some special knowledge concerning Bailey's truthfulness, but, instead, argued that Bailey's and Moore's plea agreements did not require them to testify against Petitioner in particular, only against the person or persons involved in the shooting.  The state court concluded that the prosecutor's argument in this regard was a proper one.  The state court, however, found that the prosecutor's reference to her supervisors was improper.  But, because the trial court's interruption prevented the prosecutor from completing her statement and because the trial court advised the jury that the attorneys' comments were not evidence, the Michigan Court of Appeals held no prejudice resulted from this isolated and brief statement.

"[T]he *Darden* standard is a very general one, leaving courts 'more leeway ... in reaching outcomes in case-by-case determinations.'" *Parker*, — U.S. —, 132 S.Ct. at 2155 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The Michigan Court of Appeals reasonably disposed of Petitioner's prosecutorial misconduct claim. It was not improper for the prosecutor to argue that Bailey's and Moore's plea agreements did not specifically require testimony against Petitioner.  And, although the prosecutor's comment regarding her supervisors was improper, the statement was brief, not inflammatory, and, in light of the strength of the evidence against Petitioner

and the instruction advising the jurors that they alone were charged with determining the witnesses' credibility, did not prejudice the petitioner. Even if the court of appeals erred in its holding, habeas relief would be denied because the court of appeals' decision was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at —, 131 S. Ct., at 786-787. Habeas relief, therefore, is denied.

## V.   Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability ("COA") is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The substantial showing threshold is satisfied when a petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

In this case, the Court concludes that reasonable jurists would not debate the

16

Court's conclusion that none of the claims in the habeas petition warrant relief.

Therefore, the Court denies a certificate of appealability.

## VI.    Conclusion

Accordingly, **IT IS ORDERED** that the petition for a writ of habeas corpus

and a certificate of appealability are **DENIED** and the matter is **DISMISSED WITH**

**PREJUDICE.**


S/Denise Page Hood
Denise Page Hood
United States District Judge

Dated:  July 31, 2014

I hereby certify that a copy of the foregoing document was served upon counsel of
record on July 31, 2014, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager

17